**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.   Case No. 3:21-cr-16-MMH-JBT

MARION MICHAEL O'STEEN

_____/

**O R D E R**

    **THIS CAUSE** is before the Court on Defendant O'Steen's Motion for New Trial (Doc. 178; Motion), filed July 18, 2022. Following an eight-day jury trial, on June 15, 2022, the jury returned a verdict finding Defendant Marion Michael O'Steen not guilty as to Counts One and Two of the Indictment (Doc. 1; Indictment) and guilty as to Counts Three and Four. See Verdict Form (Doc. 162; Verdict). Specifically, with regard to Count Three, the jury found O'Steen guilty of interfering with commerce by extortion and extortion under color of official right in violation of 18 U.S.C. § 1951(a). See Verdict at 3; Indictment at 13–14. With regard to Count Four, the jury found O'Steen guilty of failing to file Form 8300 to report a financial transaction in violation of 31 U.S.C. §§ 5331 and 5322 and 31 C.F.R. § 1010.330(a). See Verdict at 4; Indictment at 14–15. In the Motion, O'Steen requests that the Court grant him a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure (Rule(s)). See Motion at 1. The Government filed a response in opposition to the Motion. See Response

in Opposition to Motion for New Trial (Doc. 181; Response), filed August 18, 2022. Accordingly, this matter is ripe for review.

## I. Legal Standard

Rule 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The "interest of justice" standard is broad, and the trial court is vested with substantial discretion in determining whether to grant the motion. See United States v. Vicaria, 12 F.3d 195, 198 (11th Cir. 1994); United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985). Thus, the court considers "whether the verdict must be set aside 'in the interest of justice.'" United States v. Green, 275 F. App'x 898, 899 (11th Cir. 2008) (internal quotations omitted);[1] see also Vicaria, 12 F.3d at 198; United States v. Hall, 854 F.2d 1269, 1271 (11th Cir. 1988) (concluding that the trial "court has very broad discretion in deciding whether there has been a miscarriage of justice"); Martinez, 763 F.2d at 1312.

## II. Discussion

In the Motion, O'Steen argues that it is in the interest of justice to grant a new trial because "the verdict was based on several legal errors that together deprived O'Steen of a fair trial." Motion at 1–2. In its Response, the

---

[1] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

- 2 -

Government asserts that a new trial is not warranted because the Court did not err in its rulings and, even if the Court did err, the errors did not deprive O'Steen of a fair trial. See Response at 1. Upon careful review of the arguments and the applicable law, the Court finds that the Motion is due to be denied.

### A.   Testimony of Mr. Richardson

As an initial matter, O'Steen contends that the Court erred by admitting the testimony of Scott Richardson, an expert witness who gave his opinion that O'Steen's fee arrangement with his client Andy Tong was unethical and in violation of the rules of the Florida Bar. See Motion at 2–3. According to O'Steen, Richardson's testimony was not relevant to the crime charged in Count Three of the Indictment and was "extremely prejudicial." Id. at 3. Specifically, O'Steen argues that Richardson's testimony had the potential to confuse or mislead the jury "to think that O'Steen is being charged with ethical violations" and would "paint O'Steen as an unethical person" who is "inclined to participate in an extortion or bribery scheme." Id. at 2–3. Regarding Richardson's testimony, the Government asserts that O'Steen opened the door to this testimony when the defense represented in its opening statement that O'Steen was a good attorney who "got good results" for his clients. Response at 4 (quoting Excerpt of Jury Trial (Defendant's Opening Statements) (Doc. 150; O'Steen's Opening Statement Tr.) at 40). In addition, the Government contends that Richardson's testimony assisted the jury in assessing whether O'Steen

- 3 -

acted willfully.  See id. at 4–5.  The Government maintains that the Court cured any undue prejudice by giving a cautionary instruction at the time of Richardson's testimony and by repeating that caution in the Court's final instructions to the jury.  See id. at 5–6.

The Court finds that Mr. Richardson's testimony was properly admitted. To obtain a conviction on Count Three of the Indictment, the Government had to prove that O'Steen knowingly caused Mr. Tong to part with property by using extortion or extortion under color of official right.  See Court's Final Jury Instructions (Doc. 160; Jury Instrs.) at 27, filed June 15, 2022.  In his opening statement, O'Steen's counsel asserted that O'Steen did not knowingly engage in extortion because he simply charged a fee for providing legal services.  See O'Steen's Opening Statement Tr. at 22 ("[O'Steen] says, 'And for all this extra work I'm doing, I'm imposing the extra-fee paragraph in my contract.  I need more money.'"); id. at 25 ("The money was for fees."); id. at 28 ("Instead, O'Steen tells Tong again.  The money is for his fee . . . .").  Mr. Richardson provided his expert opinion that, in charging Mr. Tong, O'Steen had violated two rules of professional responsibility, one relating to clearly excessive fees and one regarding the prohibition on charging contingent fees in criminal cases. Excerpt of Jury Trial (Testimony of Scott Richardson) (Doc. 165; Richardson Tr.) at 18–19, filed June 17, 2022.  Based on Mr. Richardson's testimony, the jury could reasonably infer that O'Steen was not innocently charging a fee for

his legal services because the rules of professional responsibility prohibited charging that type of fee. Moreover, Mr. Richardson's testimony rebutted O'Steen's assertion that the fee was proportional to the amount of work that he had performed. Thus, Mr. Richardson's testimony was relevant to the question of intent—whether O'Steen was innocently charging a fee for his services or was knowingly engaging in extortion.

In addition, the Court finds that the probative value of Mr. Richardson's testimony was not substantially outweighed by the danger of unfair prejudice. The evidence had substantial probative value to prove an element of the Government's case. In contrast, the danger of unfair prejudice was low because the jury was not misled into thinking that O'Steen was on trial for committing ethical violations. During Mr. Richardson's testimony and at the close of all the evidence, the Court instructed the jury that violating the rules of professional responsibility is not a crime and that the jury could not convict O'Steen solely because he violated ethical rules. See id. at 37–38; Jury Instrs. at 10.[2] The Court presumes that the jury followed this instruction. See United States v. Gallardo, 977 F.3d 1126, 1138–39 (11th Cir. 2020). Accordingly, the Court

---

[2] The Court's instructions were nearly identical to O'Steen's proposed instruction on this issue. See Notice of Filing Proposed Jury Instructions (Doc. 125; O'Steen's Proposed Instrs.) at 4, filed May 27, 2022.

- 5 -

concludes that its admission of Mr. Richardson's testimony does not warrant a new trial.

### B. Motions for Mistrial

Next, O'Steen asserts that the Court erred in denying two of O'Steen's motions for mistrial. See Motion at 3. The Eleventh Circuit has instructed that a "defendant is entitled to a mistrial only if he shows substantial prejudice, meaning that it is reasonably probable that, but for the alleged error, the outcome of the trial would have been different." Gallardo, 977 F.3d at 1138. Here, the Court finds that O'Steen has failed to show errors or substantial prejudice arising from those alleged errors.

#### 1. "Clannish" and "Good Old Boy" Testimony

O'Steen argues that the Court should have granted a mistrial after the Government's witness Jeffrey Siegmeister made "constant and repeated reference to the terms 'Clannish' and . . . 'Good old boys'" when referring to O'Steen's social and political connections in Dixie County. Motion at 3–4.[3] According to O'Steen, Siegmeister used these terms to prejudice O'Steen in the "eyes of the African American jurors." Id. at 4. O'Steen contends that "we cannot be confident that the verdict – which was clearly a compromise verdict given the not guilty verdicts on counts one and two – was not decided based on

---

[3] The record belies the suggestion that the references to "clannish" or "the good old boys" were "constant and repeated."

racial animus." Id.  In its Response, the Government argues that O'Steen's assertion about the jury is a "baseless assumption." Response at 6–7.

The Court finds that, in context, Mr. Siegmeister's use of the terms "clannish" and "good old boy network" suggested that O'Steen was a member of a tight-knit community, not a racist group.  As the Court noted at the time of O'Steen's motion for mistrial, Mr. Siegmeister's testimony did not suggest race or racial groups in any way, did not inject race into the trial, and did not create confusion about whether he was referring to race.  See Excerpt of Jury Trial (Defendant's Motions for Mistrial) (Doc. 176; Motions Tr.) at 16–17, 19, filed July 13, 2022.  The Court carefully watched the jury throughout the trial and never saw a juror "recoil[]" at the use of the terms "clannish" or "good old boy network." Id. at 20.  The Court saw no evidence that the jury was distracted by race or viewed O'Steen as racist based on Mr. Siegmeister's testimony. Consequently, Mr. Siegmeister's comments were not improper and did not unduly prejudice O'Steen.

In an abundance of caution, after O'Steen's objection and motion for mistrial, Mr. Siegmeister testified to the jury that he was not referring to groups on the basis of race.  See Excerpt of Jury Trial (Direct Examination of Jeff Siegmeister) (Doc. 183) at 53.  And, at O'Steen's request, the Court instructed the jury that "[t]o the extent the words 'clannish' and 'good ol' boy network' are used for the remainder of the trial, I'm instructing you that you should

understand that they in no way suggest any affiliation with racist groups." Id. Each of the jurors then confirmed that they could follow that instruction. See id. Even if the terms "clannish" and "good old boys" initially confused or misled any jurors, the Court's cautionary instruction was sufficient to cure any such prejudice. See Gallardo, 977 F.3d at 1138–39; United States v. Perez, 30 F.3d 1407, 1411 (11th Cir. 1994) (per curiam) ("When a court gives a direct and explicit curative instruction regarding improper testimony, it supports the court's decision not to grant a mistrial by decreasing the possibility of undue prejudice."); see also United States v. Evers, 569 F.2d 876, 879 (5th Cir. 1978) ("The voicing of potentially prejudicial remarks by a witness is common, and any prejudice is generally cured efficiently by cautionary instructions from the bench.").[4] O'Steen's argument—that the jury may have disregarded the context of the testimony, Mr. Siegmeister's explicit clarification, and the Court's instruction—is pure speculation. The Court is confident that the use of the terms "clannish" and "good old boys" did not prejudicially affect O'Steen's substantial rights. Therefore, the Court finds that it did not err by denying O'Steen's motion for a mistrial.[5]

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[5] The Court is in no way persuaded that what O'Steen describes as a "compromise verdict" suggests that the jury acted based upon racial animus. To the contrary, the fact that the jury convicted O'Steen on some counts but acquitted him on others far more likely reflects

### 2.     Money Laundering Testimony

Finally, O'Steen maintains that the Court should have granted a mistrial after IRS Agent Craig Castiglia testified and presented evidence "relating to money laundering, implying that O'Steen was engaged in money laundering." Motion at 5.  O'Steen argues that the Government did not provide a proper notice of its intent to use this evidence, in violation of Rule 404(b) of the Federal Rules of Evidence (Evidence Rule(s)).  See Motion at 5.  In its Response, the Government contends that Agent Castiglia did not unduly prejudice O'Steen by providing a "basic overview of ways one may conceal funds" when there was evidence that O'Steen may have attempted to conceal funds.  Response at 7–8. According to the Government, Agent Castiglia's brief mention of money laundering "hardly warrant[ed] a mistrial," and any prejudice was cured by the Court's cautionary instruction.  Id. at 8.

Agent Castiglia testified about his investigation into O'Steen's financial dealings.  See generally Excerpt of Jury Trial (Testimony of Craig Castiglia) (Doc. 182; Castiglia Tr.), filed August 29, 2022.  During his testimony, Agent Castiglia provided a brief overview of money laundering and ways that individuals may attempt to conceal the proceeds of illegal activity.  See Motions Tr. at 24, 28–29.  O'Steen's vague objection to evidence "relating to money

---

that the jury evaluated each charge based on the evidence and rendered a verdict based on its assessment of the evidence, not one based on any prejudice toward the Defendant.

laundering" does not identify specifically which evidence he believes was improper and warranted a mistrial. Based on its review of the record, the Court finds that Agent Castiglia's testimony properly addressed actions charged in the Indictment, conduct for which the Government had provided an Evidence Rule 404(b) notice, and issues that O'Steen had introduced in his cross-examination of Mr. Siegmeister.[6]  See Indictment at 10–11 (charging a conspiracy that involved the sale of a bull from Mr. Siegmeister to O'Steen and O'Steen's father); id. at 14–15 (charging a failure to file Form 8300); United States' Notice of Intent to Use "Other Act" Evidence (Doc. 120) at 2, filed May 19, 2022 (discussing checks in amounts just below the currency transaction reporting threshold); Excerpt of Jury Trial (Testimony of Jeff Siegmeister, Continued) (Doc. 185) at 211–12 (discussing the documentation of the bull sale between Mr. Siegmeister and O'Steen's father). In addition, at O'Steen's request, the Court gave the following cautionary instruction to the jury: "I do want to make sure you understand that there is no charge of money laundering in this case. I am going to allow testimony about that, but you should not infer anything from that with regard to Mr. O'Steen." Motions Tr. at 28. The Court presumes that the jury followed this instruction. See Gallardo, 977 F.3d at

---

[6] Notably, O'Steen did not request a limiting instruction based on Evidence Rule 404(b) during the testimony of Agent Castiglia or the Court's final charge to the jury. See generally Castiglia Tr.; O'Steen's Proposed Instrs.

- 10 -

1138–39; Perez, 30 F.3d at 1411; Evers, 569 F.2d at 879. Because Agent Castiglia's testimony was not improper and the cautionary instruction eliminated any potential confusion or prejudice, a new trial is not warranted.

## III. Conclusion

Having reviewed O'Steen's arguments and the record, the Court finds no error in the rulings which O'Steen challenges. The Court's instructions clarified any potential misunderstandings and cured any undue prejudice to O'Steen. Consequently, a new trial is not in the interest of justice, and the Motion is due to be denied. Accordingly, it is

**ORDERED:**

Defendant O'Steen's Motion for New Trial (Doc. 178) is **DENIED.**

**DONE AND ORDERED** in Jacksonville, Florida, on August 31, 2022.

MARCIA MORALES HOWARD
United States District Judge

lc30
Copies to:

Counsel of Record